UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: _____

**SECURITIES AND EXCHANGE COMMISSION,**

        **Plaintiff,**

v.

**JUDITH PARIS-PINDER,**

        **Defendant.**

_____/

**<u>COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF</u>**

Plaintiff Securities and Exchange Commission (the "Commission") alleges as follows:

### I.    <u>INTRODUCTION</u>

1. The Commission brings this action as a result of an offering fraud conducted by Judith Paris-Pinder ("Defendant"). From at least November 2019 through October 2021, Defendant fraudulently raised at least $2,300,000 from over 280 investors, mostly Haitians and Haitian-Americans living in South Florida and elsewhere, through an unregistered offering of loan agreements issued by Defendant falsely promising returns of up to 50%. Defendant falsely told investors that she would make interest generating advance loans to personal injury clients of a prominent Miami-based attorney and that investors would be repaid, with interest, within 30 to 90 days.

2. In order to carry out the scheme, Defendant made material misrepresentations to investors, claiming, among other things, that the investment was safe and investor funds would only be used to make advance loans to personal injury client borrowers. However, Defendant

grossly misrepresented to investors where their funds would be maintained and how their funds would be used.

3. Instead of making advance loans designed to generate the promised returns, Defendant misappropriated at least $483,000 of investor funds and used other investor funds to make Ponzi-like distributions.

4. As a result of the conduct alleged in this Complaint, Defendant violated Sections 5(a) and (c) of the Securities Act of 1933 (the "Securities Act"), [15 U.S.C. §§ 77e(a) and (c)], Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], and Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §§ 240.10b-5].

5. Unless enjoined, Defendant is reasonably likely to continue to violate the federal securities laws.

## II.   DEFENDANT AND RELATED ENTITIES

### A.   Defendant

6. Pinder, age 48, resides in Biscayne Park, Florida. At all relevant times, Pinder has been the president of Pinder Associates, Inc. ("Pinder Associates") and Pinder's Multi-Services and Marketing Group, LLC ("Pinder's Multi-Services").

### B.   Related Entities

7. Pinder Associates is a Florida-registered corporation formed by Pinder in March 2020 with its principal place of business in North Miami, Florida.

8. Pinder's Multi-Services is a Florida limited liability company formed by Pinder in February 2021 with its principal place of business in North Miami, Florida.

9. Pinder owned and controlled both Pinder Associates and Pinder's Multi-Services.

### III. JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d)(1), and 77v(a)] and Sections 21(d) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and 78aa].

11. This Court has personal jurisdiction over Defendant, and venue is proper in this District because many of the acts and transactions constituting violations of the Securities Act and Exchange Act occurred in this District.

12. In connection with the conduct alleged in this Complaint, Defendant, directly and indirectly, made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation or communication in interstate commerce, or the mails.

### IV. DEFENDANT'S ACTS IN VIOLATION OF THE SECURITIES LAWS

#### A. Defendant's Unregistered Investments

13. From at least November 2019, Defendant offered unregistered investments to U.S.-based investors. These offerings targeted, in particular, investors of Haitian and Haitian-American backgrounds.

14. No registration statement was filed or in effect with the Commission pursuant to the Securities Act with respect to the securities Defendant offered and sold, and no exemption from registration existed with respect to these securities.

15. Defendant offered investors loan agreements that ranged from 30 days to 90 days and offered 50% interest per term. Defendant told investors that she had a relationship with a prominent Miami, Florida-based attorney whose personal injury clients needed advance loans in anticipation of settlements. Defendant told investors that she used investor funds to make loans to

the personal injury clients, and generated the investment returns from the interest paid by the personal injury client borrowers.

16. Defendant assured investors that their investments were safe and that the attorney with whom she was working always paid out the loan proceeds from the settlements to Defendant who, in turn, would use those funds to repay investors pursuant to the loan agreements.

17. Defendant promoted this investment opportunity largely through word-of-mouth referrals from other prior investors as well as relationships with members of the local South Florida Haitian and Haitian-American community. Many of these investors did not have any pre-existing relationship with Pinder, and Pinder did not attempt to determine their level of sophistication or whether the investor was accredited.

18. If a prospective investor was interested after an initial conversation with Defendant, Defendant prepared a "loan agreement" –between Pinder and the investor – which outlined the investment amount, rate of return (50%), return amount, and the term of the investment (30, 60 or 90 days). Defendant then typically emailed the loan agreement to the prospective investor for his or her signature. Defendant also executed the loan agreement.

19. Upon receiving an executed loan agreement, Defendant provided investors with instructions for sending their investment funds to Defendant in cash, via Zelle, CashApp, wire transfer, or through in-person bank teller deposits. Investor funds were deposited by Defendant into her personal bank accounts, as well as bank accounts in the names of Pinder Associates and Pinder's Multi-Services, entities and accounts wholly controlled by Defendant.

20. Beyond signing the loan agreement and sending cash to fund their investments, investors did not have any input or otherwise participate in Defendant's advance loan business.

Investors' returns were to be generated solely from the business activities of Defendant and the attorney with whom she purportedly worked.

21.     Defendant engaged in general solicitation activities in offering and selling loan agreements. Defendant had no pre-existing relationship with most of the investors, many of whom were referred via word-of-mouth. Defendant had no personal knowledge of these investors' financial circumstances, never inquired as to whether they were accredited, and did not take any steps to determine or verify their financial condition. At least ten of the investors who invested with Defendant were unaccredited.

22.     Investors furnished capital contributions to Defendant through Defendant's loan agreements. Purported profits from investments were derived "solely from the efforts" of Defendant and the attorney with whom she claimed to work because, as Defendant represented, Defendant and the attorney exercised exclusive control over the selection of personal injury client borrowers purportedly generating investor returns. Defendant's investors relied on Defendant to invest their funds with no expectation that the investors themselves would be required to participate in efforts to generate returns.

23.     By October 2021, Defendant had raised at least $2,300,000 from over 280 investors through her advance loan agreement scheme.

### B.     Defendant Materially Misrepresented Her Experience, the Safety of the Investment, and Use of Investor Funds

24.     Defendant made numerous material misrepresentations to investors and prospective investors about, among other things, her experience with the loan agreements, the existence of an underlying advance loan operation funding personal injury clients awaiting settlements, the purported 50% "returns" on investments and the safety of loan agreements.

25. For example, Defendant told investors and prospective investors that she had been in the business of making advance loans to personal injury clients for over five years, boasting about her personal relationship with a prominent Miami, Florida attorney. In truth, Defendant had not been making advance loans to personal injury clients for over five years, and had no relationship with the Miami attorney – or any other attorney providing a base of personal injury clients awaiting settlement.

26. Additionally, Defendant falsely promised investors that their funds were safe, that the funds would be placed in an attorney's escrow account, and that their investment proceeds would be paid by the attorney upon each client's settlement. Defendant did not actually deposit investor funds in an attorney's escrow account and there here is no evidence that Defendant actually made any underlying advance loans to personal injury clients or anyone else.

27. Instead, Defendant used the investor funds she raised through the offer and sale of loan agreements to enrich herself and make "interest" payments to investors in a Ponzi-like fashion.

28. Because Defendant controlled the accounts into which investor funds were deposited, she knew that investor funds were not being used to make advance loans to personal injury clients, and therefore she was lying to investors about her use of funds.

29. Had investors known the truth about Defendant's misrepresentations, they would not have invested.

    **C.**    **Defendant Misappropriated Investor Funds**

30. Of the approximately $2,300,000 raised, Defendant misappropriated at least $483,000 for her personal expenses. She diverted funds to pay for purchases or expenses wholly unrelated to the advance loan investment operation:

| Approximate Amount Misappropriated | Date | Purpose |
|---|---|---|
| $89,000 | November 2019 – January 2022 | Living Expenses |
| $72,000 | November 2019 – November 2021 | Retail & Apparel |
| $60,000 | November 2019 – November 2021 | Travel & Entertainment |
| $53,000 | November 2019 – November 2021 | Credit Cards, Debt Recovery, & Credit Monitoring |
| $46,000 | November 2019 – August 2021 | Gifts to Family & Friends |
| $38,000 | November 2019 – March 2022 | Insurance Payments |
| $37,000 | November 2019 – September 2021 | Automobile Expenses |
| $35,000 | March 2020 – August 2021 | Defendant's Wedding |
| $17,000 | November 2019 – September 2021 | Beauty, Personal Care, & Cosmetic Surgery |
| $12,000 | January 2020 – October 2021 | Transfers to Defendant's Other Accounts |
| $24,000 | November 2019 – November 2021 | Other Unrelated Spending |

D. **Defendant's Investment Scheme Unravels**

31. Between August and October 2021, Defendant's scheme began to unravel. In August 2021, Defendant failed to make principal and interest payments to investors. To quell investor concerns, Defendant falsely told investors their payments were delayed due to issues with her bank. In fact, numerous transactions cleared Defendant's accounts during the time period in which she claimed payments were delayed because of her bank, including payments to other investors.

32. Despite Defendant's default, Defendant continued to solicit funds from investors raising approximately $327,000 from new loan agreements issued between August 1, 2021 and October 31, 2021.

33. While some investors initially received the promised "returns" from their investments, including two who invested with Defendant in late 2020, others did not because Defendant had convinced them to reinvest returns into new loan agreements. In or around November 2021, Defendant stopped paying returns at all. Most investors have failed to recover either investment principal or any promised returns.

34. Despite assurances from Defendant to several investors that they would be paid, many investors have not recovered their investments and have been unable to contact Defendant since October 2021.

## V.     CLAIMS FOR RELIEF

### Count I

**Violations of Sections 5(a) and 5(c) of the Securities Act**

35. The Commission repeats and realleges paragraphs 1 through 34 of this Complaint.

36. No registration statement was filed or in effect with the Commission pursuant to the Securities Act with respect to the securities and transactions issued by Defendant described in this Complaint and no exemption from registration existed with respect to these securities and transactions.

37. From at least November 2019 through October 2021, Defendant, directly or indirectly:

> a. made use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, through the use or medium of a prospectus or otherwise;

    b.    carried or caused to be carried securities through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale; or

    c.    made use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use of medium of any prospectus or otherwise any security,

without a registration statement having been filed or being in effect with the Commission as to such securities.

38.    By reason of the foregoing, Defendant violated, and unless enjoined, is reasonably likely to continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## Count II

### Violations of Section 17(a)(1) of the Securities Act

39.    The Commission repeats and realleges paragraphs 1 through 34 of this Complaint.

40.    From at least November 2019 through October 2021, Defendant, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, knowingly or recklessly employed devices, schemes, or artifices to defraud.

41.    By reason of the foregoing, Defendant, directly and indirectly, violated and, unless enjoined, is reasonably likely to continue to violate, Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## Count III

### Violations of Section 17(a)(2) of the Securities Act

42.    The Commission repeats and realleges paragraphs 1 through 34 of this Complaint.

43. From at least November 2019 through October 2021, Defendant, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, negligently obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

44. By reason of the foregoing, Defendant violated and, unless enjoined, is reasonably likely to continue to violate, Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)].

<u>**Count IV**</u>

**Violations of Section 17(a)(3) of the Securities Act**

45. The Commission repeats and realleges paragraphs 1 through 34 of this Complaint.

46. From at least November 2019 through October 2021, Defendant, in the offer or sale of securities by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, negligently engaged in transactions, practices, or courses of business which have operated, are now operating or will operate as a fraud or deceit upon the purchasers.

47. By reason of the foregoing, Defendant violated and, unless enjoined, is reasonably likely to continue to violate, Section 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(3)].

<u>**Count V**</u>

**Violations of Section 10(b) and Rule 10b-5(a) of the Exchange Act**

48. The Commission repeats and realleges paragraphs 1 through 34 of this Complaint.

49. From at least November 2019 through October 2021, Defendant, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails,

knowingly or recklessly employed devices, schemes or artifices to defraud in connection with the purchase or sale of any security.

50. By reason of the foregoing, Defendant violated and, unless enjoined, is reasonably likely to continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5(a) [17 C.F.R. § 240.10b-5(a)].

## Count VI

### Violations of Section 10(b) and Rule 10b-5(b) of the Exchange Act

51. The Commission repeats and realleges paragraphs 1 through 34 of this Complaint.

52. From at least November 2019 through October 2021, Defendant, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, in connection with the purchase or sale of any security.

53. By reason of the foregoing, Defendant violated and, unless enjoined, is reasonably likely to continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5(b) [17 C.F.R. § 240.10b-5(b)].

## Count VII

### Violations of Section 10(b) and Rule 10b-5(c) of the Exchange Act

54. The Commission repeats and realleges paragraphs 1 through 34 of this Complaint.

55. From at least November 2019 through October 2021, Defendant, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly engaged in acts, practices, and courses of business which have operated,

are now operating or will operate as a fraud upon any person in connection with the purchase or sale of any security.

56. By reason of the foregoing, Defendant violated and, unless enjoined, is reasonably likely to continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5(c) [17 C.F.R. § 240.10b-5(c)].

## VI.   RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that the Court find Defendant committed the violations alleged in this Complaint and:

### A.  Permanent Injunctive Relief

Issue Permanent Injunctions, restraining and enjoining Defendant, and her agents, servants, employees, attorneys, and representatives, and all persons in active concert or participation with her, and each of them, from violating Sections 5(a) and (c) of the Securities Act, 15 U.S.C. §§ 77e(a) and (c), Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Exchange Act Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

### B.  Officer and Director Bar

Issue an Order pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], permanently barring Defendant from acting as an officer or director of any issuer whose securities are registered with the Commission pursuant to Section 12 of the Exchange Act or which is required to file reports with the Commission pursuant to Section 15(d) of the Exchange Act.

### C.  Disgorgement and Prejudgment Interest

Issue an Order directing Defendant to disgorge all ill-gotten gains or proceeds received, with prejudgment interest thereon, resulting from the acts and/or courses of conduct alleged in this Complaint.

### D.  Civil Monetary Penalties

Issue an Order directing Defendant to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

### E.  Further Relief

Grant such other and further relief as the Court may deem just and proper.

### F.  Retention of Jurisdiction

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

Dated: September 26, 2022

Respectfully submitted,

By:   **s/ Teresa Verges**
Teresa Verges, Esq.
Regional Trial Counsel
Florida Bar No.: 997651
Telephone: (305) 982-6376
Email: vergest@sec.gov

Attorney for Plaintiff
**Securities and Exchange Commission**
801 Brickell Avenue, Suite 1950
Miami, Florida  33131
Telephone: (305) 982-6300
Facsimile:  (305) 536-4154

Of counsel:

Najwa-Monique Sharpe, Esq.
Counsel
Securities and Exchange Commission
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
Telephone:  (305) 416-6260